# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 12cr1055-LAB |
|---|---|
| Plaintiff, | **ORDER ON RULE 35 MOTION** |
| vs. | |
| DONALD VANGUNDY, et al., | |
| Defendants. | |

## I
## Preliminary Statement

The Government has filed a motion under Fed. R. Crim. P. 35(b)(1) asking the Court to reduce the sentences of five defendants who were convicted and sentenced for offering or taking bribes to secure Navy contract work. This isn't the first time the Government has asked the Court to reduce these defendants' sentences. The prosecutors filed a motion under § 5K1.1 of the Sentencing Guidelines before the original sentencing hearing, urging the Court to impose reduced sentences because the defendants had cooperated. The Court granted that motion, and each defendant received a substantial reduction for his cooperation. The current Rule 35 motion asks the Court to grant further reductions of the defendants' sentences because they continued to cooperate *after* they were sentenced by testifying in the trial of Robert Ehnow and Joanne Loehr, who were charged in the same bribery scheme. Two of the cooperating defendants, Vangundy and Graven, have filed memoranda supporting

the Government's Rule 35 motion (the Court will assume that the motion is supported by all defendants). For the reasons given below, the motion is **DENIED**.

## II

## Propriety of Ruling on the Pleadings

As an initial matter, the Court notes that Rule 43 of the Federal Rules of Criminal Procedure generally requires that a defendant be present for "sentencing" but excludes from that requirement proceedings that "involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." Fed. R. Crim. P. 43(b)(4). *See also Dillon v. United States*, 560 U.S. __, 130 S. Ct. 2683, 2692 (2010). Because this motion falls within that exclusion, the Court assumes that no hearing is required. The assumption is bolstered by the Ninth Circuit's decision in *United States v. Tadio*, 663 F.3d 1042 (9th Cir. 2011), where the court emphasized that a Rule 35(b) motion does not authorize a district court to engage in a plenary resentencing proceeding. *Id*. at 1055 ("We caution that a resentencing under Rule 35(b) is not the equivalent of a *de novo* sentencing.").

Even if a hearing is not required, the Court assumes that it has discretion to convene one if it deems it is necessary, and to arrange for the defendants (all of whom are in custody) to be present. The Court elects not to hold a hearing on this motion. The Government has not requested one, nor has any defendant. Moreover, the motion papers make clear that the goal of the motion is to acknowledge the defendants' testimony in the trial of Ehnow and Loehr, and to give them additional credit for it. The undersigned judge presided at that trial and is thoroughly familiar with the testimony of each cooperating defendant and the likely effect it had on the outcome of the trial. Under these circumstances, a hearing wouldn't add anything or assist the Court in deciding the motion.

## III

## Standard for Granting Rule 35(b) Motion

A finding that the defendants provided substantial assistance to the Government is a prerequisite to Rule 35(b) relief. *Tadio*, 663 F.3d at 1047 ("The first step of the Rule 35(b) analysis is to determine whether the defendant offered substantial assistance sufficient to trigger a district court's authority to reduce a sentence."). While a district court has no authority to grant Rule 35 relief unless the Government moves for a reduction, *id*. at 1052, neither is a district court obligated to reduce a

- 2 -

12CR1055

previously-imposed sentence merely because the Government requests it. *United States v. Smith*, 839 F.2d 175, 180 (3d Cir. 1988). Instead, the court's role in the Rule 35 process is to decide whether to accept the Government's recommendation and, if so, the magnitude of departure as a function of the degree and nature of the cooperation. *Tadio*, 663 F.3d at 1048. In other words, a district judge decides, in the first instance, whether to reduce a sentence due to a defendant's assistance, and, if so, the extent of any reduction.

### A. Substantial Assistance

Defining some assistance as "substantial" implies that there is another type of assistance that is "non-substantial." Under this dichotomy, only a subset of defendant assistance can qualify a defendant for a substantial assistance departure. What objective and equitable parameters distinguish "substantial" assistance from "non-substantial" assistance? A Sentencing Commission policy statement helps answer this question.

The Policy Statement to U.S.S.G. § 5K1.1 instructs judges to consider the significance, usefulness, truthfulness, completeness, reliability, nature, extent, risk, and timeliness of the defendant's assistance. U.S.S.G. § 5K1.1, p.s.; *see Tadio*, 663 F.3d at 1054. Here, the Court will consider these factors in the context of the specific form of assistance that the Government urges in support of further sentence reductions — the defendants preparing to testify and testifying.

Application Note 3 to § 5K1.1 reminds judges that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. § 5K1.1, comment (n.3); *United States v. Awad*, 371 F.3d 583, 586-87 (9th Cir. 2004) (sentencing judge has wide latitude in evaluating the significance and usefulness of the defendant's assistance but should give substantial weight to the Government's evaluation). Deferring to the prosecutors' judgments makes sense because they typically have a unique and informed perspective on the benefit obtained from the assistance provided. In this case, in particular, the undersigned judge has high regard for both prosecutors, and acknowledges their comprehensive knowledge of the case and their assessment of the value of the defendants' testimony. At the same time, the Court's deference to the prosecutors can't be total. Under Rule 35(b), the Court

//

is obligated to *independently* determine whether the cooperating defendants provided "substantial assistance," and whether further reductions of their sentences are equitable and warranted.

### B. Analysis Under 18 U.S.C. § 3553(a)

If the Court agrees that the defendants provided substantial assistance, it may then consider any relevant non-assistance factors under 18 U.S.C. § 3553(a) before reducing their sentences further. *Tadio*, 663 F.3d at 1043, 1055. Rule 35(b) permits, rather than requires, a district court to consider non-assistance factors. *Id*. at 1052. In other words, a district court is free to balance the defendant's assistance with relevant non-assistance factors, and may reduce a cooperating defendant's sentence more than, less than, or equal to what the prosecutor has recommended or to what the defendant's assistance, considered alone, would warrant. *Id*. at 1055.

If a court elects to balance non-assistance factors, the starting point is the original sentence that was imposed. *Id*. As already mentioned, the Ninth Circuit has stressed that reducing a sentence under Rule 35(b) is not the equivalent of a *de novo* sentencing. A district court considering a Rule 35(b) motion must therefore confine its consideration to whether equity supports a further reduction of the defendant's original sentence in consideration of his substantial assistance and other § 3553(a) factors that are relevant to that assistance.

With these considerations in mind, the Court turns to the merits of the Rule 35 motion.

## IV

### Did the Cooperating Defendants Provide Substantial Assistance?

A defendant who provides testimony that is useful, truthful, reliable and complete can help prosecutors convict the guilty. In fact, just being able to represent that a cooperating defendant is *prepared to testify* can give prosecutors useful leverage in negotiating a guilty plea with other defendants. The Court therefore presumes, as a general matter, that when a cooperating defendant has testified truthfully and completely for the government, he has provided "substantial assistance."

The Government maintains that the five cooperating defendants in this case provided substantial assistance by testifying in the trial of Ehnow and Loehr. The prosecutors point out that in addition to testifying at trial, the defendants met with them two or more times before trial to prepare. And, although the prosecutors don't mention this point (it may have only hypothetical relevance here), the

Court assumes that the defendants' willingness to testify exposed them to some degree of potential risk because they're all currently confined in federal prison. (It is well known that prisoners take a dim view of other prisoners "snitching.")

Bearing in mind these considerations, and giving deference to the prosecutors' assessments, the Court finds that defendants Newman, Graven, and Luc substantially assisted the government by providing reliable and complete testimony, which was useful in the Government's case against defendants Ehnow and Loehr. In the Court's judgment the three defendants testified truthfully, and their testimony provided substantial support for the Government's case.

Unfortunately, the same cannot be said of the testimony given by defendants Vangundy and Grubiss. In the Court's assessment, Vangundy's trial testimony was simply not credible. Evidence presented at trial established that Vangundy had been accepting bribes for years and that he directed crucial aspects of this Navy bribery scheme. Yet when he was asked to relate basic details about the current scheme and his involvement in it, he frequently answered "I don't remember." Vangundy's halting and dissembling manner while on the witness stand at times resembled that of someone with dementia, although there is no evidence that he suffers from that disease. His ostensible forgetfulness and seemingly confused and bewildered demeanor came across as feigned, especially in view of many specific actions that he took to further the scheme, and later to cover it up. His testimony, on the whole, was not believable, and the Court seriously doubts whether the jury believed any part of it that was not corroborated — and perhaps not even then. In sum, Vangundy's testimony distracted from the Government's case, rather than assisted it. The Court concludes that he did not substantially assist the Government by testifying.

Unlike Vangundy, defendant Grubiss' problem wasn't so much his demeanor or a feigned lack of recollection, but the series of lies he told *after* he was sentenced and *before* he testified in Ehnow's and Loehr's trial. Without detailing Grubiss' entire web of post-sentencing deceit, suffice it to say that his numerous fibs, concoctions, misrepresentations, and exaggerations, which he either admitted or were otherwise conclusively established during the trial, totally undermined his credibility as a witness. He came across like a straw man — a weak effigy whose every answer was easily refuted by something he had said previously. In fact, it is strange that the prosecutors are even asking the Court to give

Grubiss more credit since he didn't testify as a Government witness. Instead, he was called by counsel for defendant Loehr, who attempted to blame him for the crimes of which she was accused. Grubiss was a ready foil for that purpose, and he was easily impeached with the numerous false and inconsistent statements he had made. When the Government's turn to examine him came, it was not surprising that Mr. Huie, one of the prosecutors, meekly declined by saying "no questions." The Court finds that Grubiss did not substantially assist the Government's case.

The Court's conclusion that defendants Vangundy and Grubiss did not provide substantial assistance does not overlook other relevant circumstances. Both defendants met with the prosecutors before they were called to testify, and presumably rehearsed what they would say. But the Court seriously doubts whether the defendants were entirely forthcoming with the prosecutors during the prep sessions or, alternatively, whether they stuck to the script. Otherwise, why would the prosecutors call Vangundy to repeatedly chant "I don't recall" in response to questions calling for basic answers about the scheme that he should have known? Likewise, would the prosecutors really have included Grubiss on their witness list had he informed them of his extensive post-sentencing, pre-trial duplicity? Aside from these concerns, the Court is not aware that Vangundy or Grubiss were subjected to any threats because they testified. And frankly, after hearing them testify, it is hard to conceive that such unhelpful testimony would have subjected either to recrimination from fellow inmates.

In sum, the Court has considered and evaluated the relevant factors informing whether Vangundy and Grubiss provided substantial assistance by testifying, and has given required deference to the prosecutors' assessments. The Court concludes that defendants Vangundy and Grubiss did not substantially assist the Government by testifying, and therefore a further reduction of their sentences under Rule 35 is unwarranted.

V

**18 U.S.C. § 3553(a) ANALYSIS**

The Ninth Circuit has cautioned courts against overvaluing the cooperation provided by a defendant. *See United States v. Ressam*, 679 F.3d 1069, 1091-92 (9th Cir. 2012) (en banc). In *Ressam*, the court reversed, in part, because it determined that the district court had given excessive weight to the defendant's cooperation and, on that basis, had imposed a sentence that was too low. *Id*. Because

this Court previously granted substantial sentence reductions to Newman, Graven and Luc, there is a similar risk here that granting further reductions will overvalue their cooperation. To guard against this risk, the Court now chooses to exercise its discretion to reconsider relevant non-assistance factors under § 3553(a) in deciding whether to further reduce the sentences. The Ninth Circuit has outlined the process that district courts must follow:

> If a defendant has provided substantial assistance, the court proceeds to the second step and determines the extent to which the defendant's sentence should be reduced. At this step, the non-assistance factors of § 3553(a) properly guide a district court's exercise of its discretion in determining the extent of the reduction.

*Tadio*, 663 F.3d at 1048. The Ninth Circuit has emphasized that "all of the factors of § 3553(a) may be considered, to the degree they are relevant, in determining the extent of a sentence reduction under Rule 35(b)." *Id*. But, to reiterate, the analysis must be performed "against the backdrop of a defendant's original sentence." *Id*. at 1053.

The Court originally sentenced defendants Newman and Graven within the advisory Sentencing Guidelines ranges, but reduced each of their offense levels for their cooperation. Graven received a 5 level reduction, while Newman received a 3 level reduction. The Court also reduced Luc's Guidelines offense level by 3, but imposed a sentence that was three months longer than the high end of his applicable Guidelines range. These reductions amounted to 23 months off from the high end of the starting Guideline range for Graven (low end sentence of 18 months rather than potential high end sentence of 41 months), and 15 months off for Newman (low end sentence of 18 months rather than potential high end sentence of 33 months). Although Luc was sentenced outside his Guideline range, he nonetheless received a 7 month reduction for his presentence cooperation (30 months rather than a potential high end sentence of 37 months).[1]

Before the sentencing hearing, the Government offered these explanations for reducing the defendants' sentences:

---

[1] Vangundy and Grubiss each received 4 level reductions in their Guidelines offense levels for their assistance. Vangundy was sentenced to 41 months, rather than a potential high end Guidelines sentence of 78 months before the reduction for cooperation.

Likewise, for his cooperation (and for other reasons) Grubiss was sentenced to 18 months, rather than a potential high end Guidelines sentence of 57 months. By itself, the 5 level sentencing reduction that Grubiss received for cooperating cut his potential exposure by 27 months.

### John Newman

Newman and his counsel met with investigators on two occasions, beginning in April 2011. Newman provided information about his role in the scheme, and the roles of his codefendants. He also provided information about specific criminal transactions engaged in by his former employer Ehnow, and by Centerline, transactions corroborated by search warrant records, bank records, and/or wire records in the government's possession. In the view of agents, Newman was forthcoming and truthful.

In the view of the undersigned [Prosecutor Huie], Newman was particularly clear and well-organized in the information he provided.

The United States anticipates calling Newman as a witness at trial, and he has agreed to testify truthfully.

United States Motion Under U.S.S.G. § 5K1.1, filed September 10, 2012, at 8 ("Original § 5K1.1 Motion").

### Michael Graven

Graven and his counsel met with investigators on two occasions, beginning in April 2011. Newman [sic] provided information about his own role in the scheme, and the roles of his co-defendants. He also provided information about interactions with Ehnow and Centerline. Additionally, Luc [sic] provided information about potential fraud or product substitution engaged in by other, unrelated parties who have not been charged. In the view of the agents, Graven was forthcoming and truthful.

The United States may call Graven as a witness at trial, and he has agreed to testify truthfully.

Original § 5K1.1 Motion at 8-9.[2]

### Kiet Luc

Luc and his counsel met with investigators on two occasions, beginning in February 2011, with each debriefing lasting several hours. Luc provided information about his own role in the scheme, and the roles of his codefendants. He also provided information about the specific criminal transactions engaged in by Ehnow, transactions corroborated by search warrant records, bank records, and/or wire records in the government's possession. Additionally, Luc provided information about potential fraud or product substitution engaged in by other, unrelated

//

---

[2] The Government also filed a separate memorandum, under seal, outlining Graven's additional cooperation. Without letting the cat out of the bag, that memorandum explained that Graven had assisted with other facets of the FBI's bribery investigation that did not result in arrests or prosecution.

> parties who have not been charged. Luc also answered questions posed informally through counsel. In the view of agents, Luc was forthcoming and truthful.
>
> The United States anticipates calling Luc as a witness at trial, and he has agreed to testify truthfully.
>
> The United States is also informed that in late March 2011, Luc's counsel contacted [defendant Brian] Delaney's counsel, and advised that Luc would testify against the co-defendant if the case went to trial. [Defendant Delaney subsequently pled guilty on March 28, 2012 and was sentenced on October 9, 2012].

Original § 5K1.1 Motion at 7-8.

It appeared from the Government's Original § 5K1.1 Motion that defendants Newman, Graven, and Luc had provided *all* of the information they knew about the bribery scheme *before* they were sentenced. The Government's Rule 35(b) submission does not contradict this assumption, nor does it represent that the defendants provided additional useful information after they were sentenced. All that was left, then, was the contingency that the defendants might have to repeat the information, under oath and before a jury, if any of the codefendants elected to go to trial. In fact, according to the Government's original § 5K1.1 proffer, the prosecutors had discussed the possibility of having to testify with each defendant, and each had agreed to testify if necessary.

Subsection (b)(3) of Rule 35 permits the Court to consider the defendant's presentence assistance in its evaluation of whether the defendant has provided substantial assistance. In the comment to the 1998 Amendments to the rule, the Advisory Committee cautions that Rule 35 "is not intended to provide a double benefit to the defendant. Thus, if the defendant has already received a reduction of sentence under U.S.S.G. § 5K1.1 for substantial pre-sentencing assistance, he or she may not have that assistance counted again in a post-sentence Rule 35(b) motion." Fed. R. Crim. P. 35, advisory committee's note (1998 Amendment).

At first blush, it appears that Newman, Graven, and Luc have already received credit for agreeing to testify. In its original § 5K1.1 motion, the Government asked the Court to reduce their sentences, in part, because the prosecutors "anticipat[ed]" calling Newman and Luc to testify, and because they "may" call Graven. Underscoring the likelihood that the defendants would testify, the Government represented that all three had "agreed to testify truthfully." Regardless of whether a

meaningful distinction can be drawn between receiving credit for *agreeing to testify* versus *actually testifying*, the Court, at a minimum, initially reduced the defendants' sentences based in part on their *willingness* to testify. Bearing in mind that Rule 35 is not be used as a vehicle for obtaining "a double benefit," it is questionable here whether the defendants are entitled to any further reductions of their sentences simply because they made good on a previous commitment to testify.

Separately from the double benefit concern, the Court concludes that several non-assistance factors under § 3553(a) weigh against further reducing the sentences. Evidence presented at trial clarified that the involvement of defendants Newman and Luc in the bribery scheme extended beyond just offering and taking bribes. Both also actively tried to cover up their activities once officials started asking questions. In wiretap evidence played during the trial, Newman and Luc discussed with Ehnow how to disguise their fraud by substituting and disguising products the Navy had already received and paid for in place of the phantom products listed on the phony invoices. The Court was unaware of this cover-up attempt when it sentenced Newman and Luc. The Government didn't say anything about it during the sentencing hearing, nor apparently did the prosecutors tell the United States Probation Department about it beforehand because there was no mention of it in the presentence reports.

By attempting to cover up their involvement in the bribery scheme, Newman and Luc entered into a new conspiracy, obstructed justice, and compounded the seriousness of their initial wrongdoing. The Court views the evidence of the subsequent cover up as aggravating under § 3553(a)(1) and (a)(2)(A), in that it exacerbates the nature and circumstances of the defendants' involvement in the bribery scheme, and compounds the seriousness of their initial misconduct.

Although no evidence was presented at trial that Graven participated in attempts to cover up, he admitted in his testimony that he began offering bribes to Navy employees as early as 2008 and that he continued to bribe them through 2011. Graven testified that as time went on the number and the value of the bribes increased. Graven falsely characterized the emoluments he lavished on Vangundy, Luc and other Navy employees as ordinary "line items" on the fraudulent invoices he submitted for payment. Even more galling, he testified that he always added his customary 20% – 25% markup to the amount of the bribes on the invoices. The gist of this evidence was known at Graven's sentencing,

//

but hearing the details firsthand heightened and reinforced the Court's initial perception as to the brazenness of his conduct.

Graven made good on his promise to the Government to testify if he was called. But, as pointed out above, he already received time off his sentence for making that promise. Considering Graven's lengthy and comprehensive involvement in the scheme to bribe Navy employees, the Court finds that further reducing his sentence would be inconsistent with the sentencing objectives of promoting respect for the law, providing just punishment for his offenses, and generally deterring others from offering or taking bribes in relation to government contracts. *See* 18 U.S.C. § 3553(a)(2)(A) and (a)(2)(B).[3]

After balancing the assistance provided by defendants Newman, Graven and Luc against relevant § 3553 considerations, the Court concludes that no further reduction of their sentences is warranted. The defendants' assistance was acknowledged and credited when they were sentenced, and the credit was proportionate to the assistance that they provided. Any further reduction of the defendant's sentences would be inimical to important sentencing objectives of § 3553.

## VI

## CONCLUSION AND ORDER

The Court concludes that defendants Vangundy and Grubiss did not provide substantial assistance to the Government after they were sentenced. Defendants Newman, Graven and Luc did, but they have already been adequately credited for it. The Government's motion pursuant to Fed. R. Crim. P. 35(b) to further reduce all cooperating defendants' sentences is **DENIED.**

**IT IS SO ORDERED**

DATED: APRIL 18, 2013

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[3] Even if the Court were to find that Vangundy and Grubiss substantially assisted the Government by testifying, it would likewise refuse to further reduce their sentences based on the same § 3553 considerations. Vangundy admitted at trial that he began taking bribes as early as 2003, and he was a ring leader in the current bribery scheme. Grubiss' participation in the scheme involved similar aggravating circumstances to those cited above, including attempts to hide and destroy evidence. In hindsight, both of these defendants probably deserved *longer* sentences than the ones the Court imposed.